UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:06-CR-00394 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE ANN ALDRICH |
| | ) | |
| JOSEPH H. SMITH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | SENTENCING MEMORANDUM |
| | ) | |
| | ) | |

Joseph H. Smith was named in a 27 count indictment filed on August 16, 2006. On July 3, 2008, he was found by a jury to be guilty on counts 18 through 23: count 18 for conspiracy to defraud the IRS in violation of 18 U.S.C. § 371; counts 19 through 22 for making a false tax return in violation of 26 U.S.C. § 7206(1); and count 23 for corruptly endeavoring to obstruct and impede in violation of 26 U.S.C. § 7212(a). On December 11, 2008, the court sentenced Smith to imprisonment for 12 months and one day on count 18 and three months on each of counts 19 through 23, to be served concurrently with the sentence on count 18. The court also imposed two years of supervised release to follow the term of imprisonment and 150 hours of community service during the period of supervised release. Finally, the court orders restitution to the IRS in the amount of $395,154.

This sentencing memorandum, together with the sentencing transcript and the judgment and commitment order, provides a thorough explanation of the court's imposition of a non-guidelines sentence. *See United States v. Liou*, 491 F. 3d 334, 339 n.4 (6th Cir. 2007) (remarking that "a thorough

explanation is the most reliable way for a district court to makes clear its reasons supporting a given sentence").

### I. The Sentencing Framework

It is the duty of every sentencing judge to evaluate each person as a unique individual, recognizing that he may not fit neatly within the confining rubric of a formulaic sentencing table.[1] The importance of this duty is being fully realized in the years since the sentencing guidelines became advisory and the "'range of choice dictated by the facts of the case' [has been] significantly broadened." *Gall v. United States*, 128 S.Ct. 586, 598 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)); s*ee also United States v. Booker*, 543 U.S. 220 (2005). Sentences that deviate from the advisory guidelines are deemed "neither presumptively reasonable nor presumptively unreasonable." *United States v. Ferguson*, 456 F. 3d 660, 664-65 (6th Cir. 2006). Further, the Supreme Court has expressly rejected "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Gall*, 128 S.Ct. at 595.

"[O]ne of the central points of *Booker*, highlighted by *Kimbrough*, is that a district court judge may disagree with the application of the Guidelines to a particular defendant because the Guidelines range is too high or too low to accomplish the purposes set forth in 3553(a)." *United States v. Johnson*, — F.3d —, No. 07-2447, 2009 WL 161733 (6 th Cir. Jan. 26, 2009) (quoting *United States v. White*, — F.3d. —, No. 05-6596, 2008 WL 5396246 (6th Cir. Dec. 24, 2008) (en banc)). The district court's

---

[1] The Supreme Court recently noted that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 128 S.Ct. 586, 598 (2007) (citing *Koon v. United States*, 518 U.S. 81 at 113 (1996)).

discretion includes the ability to vary from the Guidelines "based solely on policy considerations, including disagreements with the guidelines." *Id.*

The court begins its sentencing analysis, under the Sixth Circuit's post-Booker protocol, by correctly calculating the advisory guidelines sentencing range. The court must then consider the other factors listed in 18 U.S.C. § 3553(a). "In so doing, [the district judge] may not presume that the Guidelines range is reasonable. [She] must make an individual assessment based on the facts presented." *Gall*, 128 S.Ct. at 596-97. Finally, the court should impose a "sentence that is sufficient but not greater than necessary to comply with the purposes of § 3553(a)." *United States v. Lanesky*, 494 F. 3d 558, 561 (6th Cir. 2007). "The court need not recite these factors but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *United States v. Kirby*, 418 F. 3d 621, 626 (6th Cir. 2005). In the Sixth Circuit, if the district court's sentencing analysis is procedurally sound, the appellate court reviews the substantive reasonableness of the sentence for abuse of discretion. *United States v. Vowell*, 516 F. 3d 503, 512 (6th Cir. 2008).

## II. Sentencing Guidelines Range

The court begins by calculating Smith's sentence under the advisory sentencing guidelines. The court finds that Smith's base offense level is 18, as determined by the total tax loss. *United States Sentencing Guidelines Manual* (U.S.S.G.) § 2T4.1. Smith has no criminal history points and therefore his criminal history category is I. The advisory guidelines recommend a sentence of imprisonment between 27 and 33 months.

The government recommends an additional two-point enhancement because of Smith's alleged receipt of income from criminal activity. U.S.S.G. § 2T1.1(b)(1); *see also* Government Sentencing Memorandum, at 20. The court, however, fails to find that this enhancement is warranted. The jury

acquitted Smith of crimes related to his alleged receipt of illegal kickbacks and the court does not find by a preponderance of the evidence that Smith was engaged in criminal activity. Thus, a two-point enhancement for receipt of income from illegal activity is not appropriate in this case.

Next, the government seeks a two-point enhancement because his "offense involved sophisticated means." U.S.S.G. § 2T1.1(b)(2); *see also* Gov. Sentencing Memorandum, at 21. "Sophisticated means" is defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G § 2T1.1(b)(2) at cmt. n. 4. Because this court has found that the government has not met its burden of showing that a kickback scheme took place, the use of two bank accounts to hold income is not "especially complex or especially intricate" and therefore a two-point enhancement is inappropriate in this case.

Similarly, the government seeks a two-point enhancement for "abuse of his position of trust as CFO and later Financial and Legal Secretary of the Diocese." Gov. Sentencing Memorandum, at 23; *see also* U.S.S.G. § 3B1.3. A two-point enhancement may be appropriate if a defendant abuses a position of public or private trust "in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. "For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense." U.S.S.G § 3B1.3, cmt. n.1. Because this court has found that the government has failed to prove by a preponderance of the evidence that Smith participated in an illegal kickback scheme, an enhancement for abuse of trust would also be inappropriate in this case.

Therefore, Smith's base offense level remains 18, with a criminal history category of I.

### III. Section 3553(a) Factor Analysis

Section 3553(a) requires the sentencing court to consider the following factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment," to "afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant," and to provide the defendant with training, medical care, or other treatment; (3) "the kinds of sentences available"; (4) the applicable advisory Guidelines range; (5) relevant policy statements by the Sentencing Commission; (6) "the need to avoid unwarranted sentenc[ing] disparities"; and (7) "the need to provide restitution to . . . victims." 18 U.S.C. § 3553(a). Though the district court must consider these factors, the court need not explicitly analyze each of the factors in its sentencing determination. *See e.g., United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005).

#### 1. Nature and Circumstances of the Offense

Smith was convicted of six counts of tax related crimes. From 1999 through 2002 Smith falsified his personal tax returns by understating his income or capital gains. These tax counts are independent of the counts that Smith was acquitted of by the jury. Even under Smith's explanation that he received payments from the Diocese as secret payments, and not illegal kickbacks, taxes were still owed on that income and capital gains. Similarly, income gained through Smith's business accounts, by whatever means, was not properly reported, creating a tax loss for the government.

#### 2. The History and Characteristics of Joseph Smith

Smith is 52 years old, has lived in the Cleveland area all of his life, and has no criminal history. Smith has a degree in accounting and finance and a law degree. From January 1983 through July 2004,

he was the Chief Financial Officer and General Counsel for the Diocese of Cleveland; from July 2004 through August 2006 he was the Chief Financial Officer for the Diocese of Columbus.

Smith grew up in a household with two loving parents and suffered no abuse. He does not have a history of health problems and is currently in good physical and mental health. His family - wife Anne, and two children - live in a middle class home in suburban Cleveland.

Throughout Smith's trial, the government's own witness described their admiration of Smith's character, work ethic, volunteerism, and kindness. Not one of these witness, while testifying about Smith's finances, had anything negative to say about his character. Following Smith's conviction, but prior to his sentencing, the court received numerous letters that spoke very highly of Smith. Indeed, some of the most persuasive letters were from clergy who had testified on behalf of the government. These letters detailed Smith's work to improve the lives of those in his community.

However, Smith's background, education and professional standing in the community "cuts both ways," as the government notes in its sentencing memorandum. His situation in life has allowed him to make many beneficial and lasting contributions to his community; this same life also lacks many of the unfortunate, but mitigating, factors so often seen in criminal sentencing. Smith has not suffered financial hardships or any tragic circumstances that might tempt one into shirking the civic responsibility of paying taxes.

### 3. Protecting the Public, Promoting Respect for the Law, Providing Just Punishment and Deterrence

The imposition of a just sentence requires a delicate balance of often competing sentencing policies and theories of punishment.

The sentence imposed must protect the public. One means of achieving this goal is through specific and general deterrence. Yet specific and general deterrence are inherently in conflict with one another, as the former requires the focus on the individual and the latter requires the focus on the larger societal good. The court has no doubt that the lengthy and costly ordeal of a trial and the stress of a conviction have deterred Smith from future crime, and instilled a respect for the law. The very prosecution created substantial publicity and notoriety for Smith; his reputation is forever tarnished; he has sold his home to pay for his legal defense; and the restitution owed is substantial. It is *most unlikely* that Smith will re-offend.

Yet, the sentence must also be sufficient to deter others from committing similar crimes and promote respect for the law. While it is not always necessary to incarcerate a defendant to promote such respect and demonstrate the seriousness of the crime, a sentence of probation, as requested in Smith's sentencing memorandum, does not, in this instance, promote such respect or reflect the seriousness of the crimes he has committed.

The sentence imposed on Smith strikes the appropriate balance among the competing sentencing policies. Smith will spend over a year in prison, followed by two years of supervised release with numerous restrictions and requirements, including community service. Smith must also bear the heavy restitution requirement.

As part of his sentence, Smith must use his education, skills, and background to perform 150 hours of community service, which will benefit the local non-profit organizations and the community at large. Not only does this requirement add to the punishment, it also puts to good use Smith's abilities that would otherwise be wasted during a more lengthy prison term. *See United States v. Coughlin*, 2008 WL 313099 (W.D. Ark. 2008).

### 4. The Kinds of Sentences Available

The statutory maximum sentence on Count 18 is a term of 5 years imprisonment. 18 U.S.C. § 371. Counts 19 through 23 each carry a statutory maximum sentence of 3 years imprisonment. 26 U.S.C. § 7206; 26 U.S.C. § 7212(a). The advisory sentencing guidelines range for a base offense level 18 and criminal history category of I is a term of imprisonment between 27 and 33 months. The advisory guidelines recommend against probation. U.S.S.G. § 5B1.1, application note 2.

### 5. The Need to Avoid Disparities

This court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In sentencing Smith below the advisory guidelines range, the court does not easily set aside or disregard the guidelines because they are the "product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 128 S. Ct. at 594 (2007).

The sentence imposed on Smith is not disparate from the treatment of similar offenders and the sentence imposed avoids unwarranted disparities. During fiscal year 2007, 49.2 % of defendants convicted of tax crimes in the Sixth Circuit received prison time; another 15.4 % received a split sentence that involved some prison time. *See* United States Sentencing Commission, Office of Policy Analysis, Type of Sentence Imposed by Primary Offense Category (Table 5). Among the tax defendants given prison sentences, the median sentence in the Sixth Circuit was 12 months. *Id.* at Table 7. Nationwide, the median sentence imposed was 15 months.[2] *Id.*

---

[2] The court recognizes that the statistics provided here are not ideal; the precise nature and circumstances of the tax crimes that compromise the statistics are not known and therefore a more careful analysis is not possible. Nonetheless, the court finds the statistics to be helpful in providing a rough sketch of sentencing norms and averages.

The court is aware of individual cases that vary from both the national and circuit averages. Indeed, counsel for both Smith and the government have provided individual cases where courts have imposed more lenient or harsher sentences than the one imposed here. However, § 3553(a)(6) is concerned with *national* disparities. *United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007). The sentence imposed on Smith is within both the national and circuit averages for similar crimes.

Finally, when the court properly calculates the guidelines range, it necessarily gives significant weight and consideration to the need to avoid unwarranted disparities. *Gall*, 128 S.Ct. at 599.

### 6. The Need to Provide Restitution

The court finds that the appropriate amount of restitution owed to the IRS is $395,154. Smith recommended restitution in the amount of $48,202.28, which is based on the default rate of 28% of unreported income. Smith claims his unreported income is $172,151. This figure is based on the jury's notation on the verdict form of specific material violations that it found for counts 19 through 22. However, Smith's method of computation is based on an inaccurate understanding of the jury's duty and sentencing law.

First, the jury was instructed that in order to return a verdict of guilty on counts 19 through 22, it needed to find unanimously that only one of numerous material matters was false on Smith's tax return; as a unanimous finding of a single material matter is sufficient to return a verdict of guilty, the jury needed not deliberate on the other material matters listed in a particular count. Therefore, Smith's inference that he was "acquitted" on the other material matters is not logically supported.[3] The jury

---

[3] Even if the court takes Smith's understanding of the verdict form as correct, the "district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence," so long as that sentence is "at or below the statutory ceiling set by the jury's verdict. . ." *United States v. White*, — F.3d. —, No. 05-6596, 2008 WL 5396246 (6th Cir. Dec. 24, 2008) (en banc).

-9-

likely expressed no opinion on the other material matters once they unanimously found beyond a reasonable doubt that one of the material matters on Smith's tax return was false. No inference can be logically made as to the other material matters.

Second, the proper standard to use in evaluating restitution owed is a preponderance of the evidence. Moreover, the court "may take into account facts about the defendant that the judge determines to be more probable than not, even though the jurors could not find those facts beyond a reasonable doubt." *United States v. White*, — F.3d. —, No. 05-6596, 2008 WL 5396246 (6th Cir. Dec. 24, 2008) (en banc). Therefore, the court has considered each of the material matters in counts 19 through 22 and counts 18 and 23, and finds by a preponderance of the evidence that the unreported income is in the amount of $1,411,265, which is the same amount of unreported income listed in the PSR. (PSR at 26). The court elects to apply the presumptive rate of 28% to determine the appropriate tax loss for purposes of restitution. Thus, the court finds that restitution in the amount of $395,154 is owed to the IRS.

### IV.  A Sentence that is Sufficient but Not Greater than Necessary

The court has carefully and thoroughly considered both Smith's and the government's briefs, the advisory guidelines range, and the § 3553(a) factors. The court must impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of § 3553(a). Therefore, the court concludes that a sentence within the guidelines range is not appropriate to satisfy the purposes of criminal punishment.

Smith has a background of meaningful contributions to his community and a lack of any previous criminal involvement. Yet, Smith also faced no financial hardships and his actions skirted his civic responsibility to pay taxes properly owed. The imposed term of imprisonment, while lower than

the guidelines range, still represents a significant period of incarceration. The amount of restitution owed and the cost of Smith's prosecution will forever diminish his quality of living and professional standing and provide sufficient deterrence and respect for the law.

### V. Conclusion

Therefore, for the reasons stated above, the court sentences Smith to a term of imprisonment of 12 months and one day on count 18 and three months on each of the counts 19 through 23, to be served concurrently with the sentence on count 18. The court also imposes two years of supervised release to follow the term of imprisonment and 150 hours of community service during the period of supervised release. Finally, the court orders restitution to the IRS in the amount of $395,154.

This Order is final and appealable.

IT IS SO ORDERED

                                        s/Ann Aldrich
                                        ANN ALDRICH
                                        UNITED STATES DISTRICT JUDGE

                                        Dated: February 2, 2009